## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| v. | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| ADAMAS PHARMACEUTICALS, INC., | ) **THE FEDERAL SECURITIES LAWS** |
| MARTHA J. DEMSKI, WILLIAM W. | ) |
| ERICSON, SPYRIDON | ) |
| APAPETROPOULOS, NEIL F. | ) JURY TRIAL DEMANDED |
| MCFARLANE, ANNA S. RICHO, | ) |
| MICHAEL F. BIGHAM, JOHN A. | ) |
| MACPHEE, and DAVID L. MAHONEY, | ) |
| Defendants. | |

Plaintiff Michael Kent ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE THE ACTION

1.  Plaintiff brings this action against Adamas Therapeutics, Inc. ("Adamas" or the "Company") and its corporate directors for violating Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"). By the action, Plaintiff seeks to enjoin the consummation of a tender offer (the "Tender Offer") underlying the proposed acquisition of the Company by Supernus

Pharmaceuticals, Inc. "(Supernus") through its wholly-owned subsidiary Oyster Acquisition Company Inc. ("Purchaser") (the "Proposed Transaction").[1]

2. On October 11, 2021, Adamas and Supernus jointly announced their entry into an Agreement and Plan of Merger (the "Merger Agreement") dated the preceding day. The Merger Agreement provides that, for each share they own, Company stockholder will receive (a) $8.10 per share in cash (the "Cash Amount"), plus (b) two contingent value rights per share (each, a "CVR"), which each represent the right to receive $0.50 per CVR in cash upon the achievement of certain milestones in connection with the net sales of the Company's product, GOCOVRI (the "Offer Price"). Purchaser commenced the Tender Offer on October 25, 2021, which is scheduled to expire at 12:00 midnight, New York Time, on November 24, 2021 (one minute following 11:59 p.m., New York Time, on November 23, 2021).[2]

3. On October 25, 2021, Adamas filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Adamas stockholders tender their stock into the Tender Offer, omits or misrepresents material information necessary and essential to that decision. The failure to adequately disclose such material information violates the Exchange Act as Adamas stockholders need such information to make a fully informed decision whether to do so

4. It is imperative that the material information omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their rights with respect to the Tender Offer and or any decision

---

[1] Non-party Supernus is a Delaware corporation with its principal executive offices located at 9715 Key West Ave, Rockville, Maryland 20850. Supernus's common stock trades on the Nasdaq Global Market under the ticker symbol "SUPN." Non-party Purchaser is a Delaware corporation and a wholly owned subsidiary of Supernus.

[2] The approximate value of the Proposed Transaction is $400 million.

to seek appraisal for their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Tender Offer or Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Adamas.

10. Defendant Adamas is a Delaware corporation with its principal executive offices located at 1900 Powell Street, Suite 1000, Emeryville, California 94608. Adamas is a fully integrated company focused on growing a portfolio of therapies to address a range of neurological diseases. Adamas' common stock is traded on the Nasdaq Global Market under the ticker symbol "ADMS."

11. Defendant Martha J. Demski ("Demski") is and has been a director of the Company since March 2014.

12. Defendant William W. Ericson ("Ericson") is and has been a director of the Company since 2005.

13. Defendant Spyridon Papapetropoulos ("Papapetropoulos") is and has been a director of the Company since November 2020.

14. Defendant Neil F. McFarlane ("McFarlane") has been Chief Executive Officer ("CEO") and a director of the Company since September 2019.

15. Defendant Anna S. Richo ("Richo") is and has been a director of the Company since August 2020.

16. Defendant Michael F. Bigham ("Bigham") is and has been a director of the Company since September 2016.

17. Defendant John A. MacPhee ("MacPhee") is and has been a director of the Company since May 2013.

18. Defendant David L. Mahoney ("Mahoney") has been Board Chair since September 2019 and a director of the Company since 2009. Defendant Mahoney previously served as Lead Independent Director from April 2014 until September 2019.

19. Defendant Joseph Defendants identified in paragraphs 11-18 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20. On October 11, 2021, Adamas and Supernus jointly announced in relevant part:

ROCKVILLE, MD and EMERYVILLE, CA, October 11, 2021 – Supernus Pharmaceuticals, Inc. (Nasdaq: SUPN) and Adamas Pharmaceuticals, Inc. (Nasdaq: ADMS), today announced a definitive agreement for Supernus to acquire Adamas through a tender offer for $8.10 per share in cash (or an aggregate of approximately

4

$400 million), payable at closing plus two non-tradable contingent value rights (CVR) collectively worth up to $1.00 per share in cash (or an aggregate of approximately $50 million), for a total consideration of $9.10 per share in cash (or an aggregate of approximately $450 million).  The first CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI of $150 million in any four consecutive quarters between closing and the end of 2024.  The second CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI of $225 million in any four consecutive quarters between closing and the end of 2025.  The transaction is expected to close in late fourth quarter 2021 or in early first quarter 2022.

The transaction will provide Supernus with two marketed products: GOCOVRI® (amantadine) extended release capsules, the first and only U.S. Food and Drug Administration (FDA)-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy; and OSMOLEX ER® (amantadine) extended release tablets, approved for the treatment of Parkinson's disease and drug-induced extrapyramidal reactions in adult patient.

"This acquisition represents a significant step to further build a strong and diverse Parkinson's disease portfolio, and aligns with our focus of acquiring value-enhancing, clinically-differentiated medicines to treat CNS diseases," said Jack Khattar, President and CEO of Supernus Pharmaceuticals.  "We have a proven track record of strong commercial execution, and look forward to building on GOCOVRI's growth momentum so that more patients can benefit from access to Adamas' innovative neurological therapies."

**Strategic and Financial Benefits**

- Strengthens Parkinson's disease portfolio with GOCOVRI (amantadine) extended release capsules, the first and only FDA-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy.

- Diversifies and increases revenue base and cash flow

    - Net sales of GOCOVRI were $71.2 million and $37.7 million in 2020 and for the first six months of 2021, respectively.

    - Combined with the acquisition of US WorldMeds CNS products in 2020, this transaction significantly reduces the reliance on net sales of Trokendi XR®.  In the first half of 2021 and on a combined proforma basis (including revenue from US WorldMeds and Adamas transactions), net sales of Trokendi XR® represent 48% of Supernus revenues down from 72% (excluding revenue from these transactions).

- Potential synergies of $60 million to $80 million in year one due to strong overlap with existing infrastructure.

- The acquisition is expected to be significantly accretive in 2022.

"We are pleased that Supernus recognized the value created at Adamas and firmly believe this path forward is an excellent outcome for not only our shareholders, but all our stakeholders," said Neil F. McFarlane, Chief Executive Officer of Adamas Pharmaceuticals, Inc. "With their shared commitment to helping patients affected by neurological diseases and their extensive resources, Supernus can continue to advance our mission and reach. I am extremely proud of Team Adamas for their hard work and dedication to get us to this point and am confident that partnering with Supernus will maximize the potential of our innovative therapies."

**Terms and Financing**

Under the terms of the agreement, Supernus will commence a tender offer to acquire all outstanding shares of Adamas Pharmaceuticals, Inc. for a purchase price of $8.10 per share in cash (or an aggregate of approximately $400 million) payable at closing plus two non-tradeable CVRs. All cash consideration will be funded through existing balance sheet cash.

The CVR entitles Adamas stockholders to receive up to an additional $1.00 per share in cash (or an aggregate of approximately $50 million) payable upon GOCOVRI achieving certain net sales milestones within specified periods (subject to the terms and conditions contained in a Contingent Value Rights Agreement detailing the terms of the CVRs). These milestones include (a) $0.50 per share payable if in any four consecutive quarters between closing and the end of 2024, net sales of GOCOVRI achieving $150 million, and (b) another $0.50 per share payable if in any four consecutive quarters between closing and the end of 2025, net sales of GOCOVRI achieving $225 million. There can be no assurance any payments will be made with respect to the CVR.

**Approvals and Timing of Close**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in late fourth quarter 2021 or in early first quarter 2022, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Adamas' common stock. Following the successful closing of the tender offer, Supernus will acquire any shares of Adamas that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

**Full Year Financial Guidance**

Supernus will provide full year 2022 financial guidance during the Company's fourth quarter 2021 financial results conference call in February 2022.

**Advisors**

Jefferies LLC is acting as the exclusive financial advisor to Supernus. Lazard is acting as the exclusive financial advisor to Adamas. Saul Ewing Arnstein & Lehr

LLP is serving as legal counsel and Grant Thornton is providing due diligence services to Supernus, and Cooley LLP is serving as legal counsel to Adamas.

**The Recommendation Statement Contains Material Misstatements and Omissions**

21.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Adamas's stockholders. The Recommendation Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or otherwise act.

22.     The Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's financial projections; (b) the valuation analyses underlying the fairness opinions provided by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"); and (c) potential conflicts of interest affecting Company insiders.

*Material Omissions Concerning Company Management's Financial Forecasts*

28.     The Recommendation Statement fails to disclose material information concerning the Company's financial projections, including any sort of allocation of the projected revenue for each of the Company's products and pipeline candidates over the period from 2021 through 2032.

29.     The Proxy further fails to disclose the "sales forecasts prepared by management of the Company taking into account information provided by management of Supernus regarding its marketing plans for GOCOVRI" reviewed by Lazard in connection with the provision of its fairness opinion. *See* Recommendation Statement at 30.

30.     Similarly, the Recommendation Statement fails to disclose the unlevered free cash flows relied upon by Lazard for its financial analyses, including its *Discounted Cash Flow Analysis,* as well as all line items underlying the calculation of the Company's levered free cash flow and unlevered free cash flow.

7

31.     Finally, the Recommendation Statement fails to disclose the Company's non-probability of success-adjusted projections so Adamas stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.[3]

32.     The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Adamas's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Lazard's Financial Analyses*

21.     The Recommendation Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Lazard

22.     The Proxy Statement describes Lazard's fairness opinions and the various underlying valuation analyses.  That description, however, omits key inputs and assumptions forming the bases of these analyses.  The absence of this material information precludes the Company's public stockholders from fully understanding Lazard's work.  As a result, Company stockholders cannot assess what significance to place on Lazard's fairness opinion in determining whether to participate in the Tender Offer or otherwise act.

23.     With respect to Lazard's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (a) Company's after-tax unlevered free cash flows from September 30, 2021 through the end of year 2032; (b) the inputs and assumptions underlying the range of discount rates utilized by Lazard in connection with the analysis; (c) Adamas' estimated net cash at September 30, 2021; and (d) the number of fully diluted shares outstanding of Adamas as of October 8, 2021 utilized by Lazard in connection with the analysis.

---

[3] *See* Recommendation Statement at 26.  ("The non-public, unaudited prospective financial information included information for calendar years 2021 through 2032 that reflect Adamas's *management's estimate of the probability of commercial success for the Company's products*[.]" (Emphasis supplied.)

24. With respect to Lazard's *Premia Paid Analysis*, the Recommendation Statement fails to disclose: (a) the transactions observed; and (b) the individual premia for each transaction.

25. With respect to Lazard's *Research Analyst Price Targets*, the Recommendation Statement fails to disclose the price targets observed and the sources thereof.

26. The omission of this information renders the statements in the "Opinion of Adamas's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must be fairly disclosed.

*Material Omissions Concerning Potential Conflicts of Interest Affecting Company Insiders*

27. The Recommendation Statement fails to disclose material information concerning Company insiders' potential conflicts of interest, including the specific details of all employment and retention-related discussions and negotiations that occurred between Supernus and Adamas' executive officers, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Supernus's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

28. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

29. The omission of this information renders the statements in the "Background of the Offer and the Merger" and "Arrangements between Adamas and Supernus" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

30. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Adamas stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9

31. Plaintiff repeats all previous allegations as if set forth in full.

32. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Adamas stockholders to tender their shares in the Tender Offer.

33. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

34. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

35. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements

therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

36. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Adamas, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

39. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

40. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender her shares or seek appraisal.

### COUNT III

#### Claims Against the Individual Defendants for
#### Violation of Section 20(a) of the Exchange Act

41. Plaintiff repeats all previous allegations as if set forth in full.

42. The Individual Defendants acted as controlling persons of Adamas within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Adamas and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

45. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

46. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Adamas, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  November 5, 2021  **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*